[No. 19701. Department One. April 14, 1926.]

HERMAN RAUCH, *Respondent,* v. A. D. ZANDER *et al., Appellants.*[1]

[1] PROCESS (17)—PERSONAL SERVICE—COMPLAINT—SERVICE OF COPY —SUFFICIENCY. The fact that the copy of a complaint, served with due summons, was defective in that it did not appear to be verified, and was not "certified" as a true copy, does not affect the jurisdiction of the court, where a duly verified complaint was filed and notice of such filing duly given in the summons.

[2] VENDOR AND PURCHASER (148, 155)—REMEDIES OF VENDOR—RE- COVERY OF PRICE—DEFENSES—FORFEITURE. An action by a vendor for the amount due upon a contract for the price of land, brought after the contract had matured, alleging a tender of a deed, is not based upon, and the complaint need not allege, a forfeiture of the contract for nonpayment of installments of the price.

[3] SAME (88)—TENDER OF CONVEYANCE—BY ASSIGNEE OF CONTRACT —SUFFICIENCY. The tender of performance of a contract to convey land may be made by the successor of the vendor; and the vendee has no right to receive the warranty deed of the vendor, where the contract provided for performance by the vendor, "its successors or assigns" and such successor had a connected chain of title.

[4] SAME (148)—REMEDIES OF VENDOR — RECOVERY OF PRICE — DE- FENSES. In an action for the price of land sold, the defendant is not entitled to a credit on account of stumpage and loss of profits from the sale of timber which he was prevented from cutting because of his refusal to apply the same in the manner required by the contract.

Appeal from a judgment of the superior court for Whatcom county, Joiner, J., entered June 26, 1925,

[1]Reported in 245 Pac. 17.

upon findings in favor of the plaintiff, in an action to annul a contract for the sale of land.   Affirmed.

*C. B. Sampley,* and *W. A. Martin* (*J. W. Bryan,* of counsel), for appellants.

*F. M. Hamilton* and *John A. Kellogg,* for respondent.

Holcomb, J.—Upon a reversal and remand of this case as reported in 134 Wash. 40, 234 Pac. 1039, after further proceedings in the lower court upon the appellants' challenge to the jurisdiction of the court, the lower court overruled appellants' challenge and their motion and demurrer, and permitted them to answer to the merits.   Thereafter appellants, always preserving their special appearance, answered to the merits, and a trial was had.   Appellants, at the trial, preserved their special appearance, and objections to the jurisdiction of the court, and objected to the taking of any evidence at the trial, upon the ground that there had been no proper service of process sufficient to give the court jurisdiction.   After the trial, the trial court made findings of fact, conclusions of law, and rendered a decree in favor of respondent.

[1] Appellants' first contention, earnestly presented, is that their motion to quash the service should be sustained, upon the grounds that the summons was not regular, and that the complaint was not verified.

It is urged that the copy of the summons served upon appellants was certified as the above and foregoing being a true and correct copy of the "original summons and complaint," by one of the attorneys, when the copy of the complaint attached was not a true copy.

An examination of the summons shows that it is in exact compliance with Rem. Comp. Stat., § 223.   It was

made to appear on behalf of appellants in the lower court that the copy of the complaint served upon them did not contain any verification as provided by Rem. Comp. Stat., § 281.

The original complaint on file, however, was verified as appellants admit. Had it not been verified under Rem. Comp. Stat., § 305, they were entitled to move to strike the complaint from the case. This they did not do. The record shows that the sheriff who served the summons and complaint upon appellants, made personal service upon appellant Rosa Zander, and substituted service upon A. D. Zander, by service upon Rosa Zander at the residence of the defendants "of a true and correct copy of the original summons and complaint in the action."

Section 224, Rem. Comp. Stat., provides:

"A copy of the complaint must be served upon the defendant with the summons unless the complaint itself be filed in the office of the clerk of the superior court of the county in which the action was commenced within five days after service of such summons, in which case the service of the copy may be omitted; but the summons in such case must notify the defendant that the complaint will be filed with the clerk of said court; and if the defendant appear within ten days after the service of the summons, the plaintiff must serve a copy of the complaint on the defendant or his attorney within ten days after the notice of such appearance, and the defendant shall have at least ten days thereafter to answer the same; and no judgment shall be entered against him for want of an answer in such case till the expiration of the time."

The summons in this case notified the defendants that the complaint had been "filed in the office of the clerk of the above entitled court."

There being no statutory provision requiring copies of the summons and complaint to be certified by the

attorney for the plaintiff, but only that a copy thereof be served (Rem. Comp. Stat., § 226), and the sheriff who served the summons and complaint in this action having certified that he served copies thereof, in his returns, the original complaint which was on file having been properly verified on behalf of the plaintiff, and appellants not moving under § 224, *supra,* there is no doubt that the service of the summons and complaint was regular, and the motion to strike, and the challenge to the jurisdiction of the court, were without merit. The trial court properly denied them.

[2] It is next contended that the demurrer to the complaint should have been sustained upon, among other reasons, that there was no legal declaration of forfeiture, and therefore no forfeiting of the contract sued on.

The contract was originally entered into between appellant and Jas. C. Miller and Regina C. Miller, husband and wife, on February 19, 1919. The contract was for the purchase and sale of a certain tract of land situated in Whatcom county. The total price thereof was $7,500, of which receipt of $500 cash was acknowledged, and $7,000 to be paid on or before five years from the date of the contract, deferred payments to bear interest at the rate of six and one-half per cent per annum, and to be payable on Febraury 19 of each and every year. It also stipulated that $100 of the deferred purchase price, or any multiple thereof, may be paid at the option of the purchaser at any interest paying period. It was also agreed that the purchaser should pay the taxes from and after the year in which the contract was made; that the purchaser should have possession of the real estate and that the purchaser should cut the timber upon eleven acres of the tract, and the proceeds thereof should be applied on the contract. It was stipulated that the contract should be

placed in escrow in the Ferndale State Bank, Whatcom county, and the vendor should deliver to the bank to be placed in escrow a good and sufficient warranty deed, together with an abstract of title, and the written contract between the parties, at the time, or before, when the purchaser should have paid $500 on the contract in addition to the first cash payment of $500. It was agreed that the payments should be made by the purchasers at the Ferndale State Bank for the vendor. It was also.agreed that time was of the essence of the contract, and upon failure of the purchaser to make any one of the payments when due, with accrued interest when due and payable, or upon their failure to pay the taxes upon said tract of land when due and payable, the contract should immediately become void and of no effect; that all moneys previously paid should go to the vendors as rent money and liquidated damages, and that the purchasers would, if so demanded by vendors, give immediate and peaceable possession of the real estate. Finally, it was covenanted that all covenants and agreements contained in the contract should be binding upon the heirs, executors and assigns of the respective parties the same as if their names were each severally mentioned.

The complaint, in brief, alleged entire performance by respondent, and entire non-performance by appellants. It was alleged that no further payment was ever made; that appellants failed to pay the taxes levied and assessed against the real estate for 1922, and that the taxes for 1923 were at the time of the commencement of the action due and payable, which appellants had failed and neglected to pay; that interest up to February 19, 1924, on the deferred payments under the contract was due and payable and wholly unpaid in the sum of $455. It was also alleged

that a good and sufficient warranty deed, together with an abstract of title to the real estate, had been procured, executed and delivered in escrow in the Ferndale State Bank, and appellants notified thereof, to be delivered to appellants upon their payment of the amounts due under the contract, and that appellants wholly failed and refused to pay the amounts due under the contract and receive conveyance and abstract of title to the premises. It is alleged that the time had expired for the performance of the contract, and that the entire sum of $7,000, which had been deferred in payment, was past due and unpaid. Respondent then alleged refusal of appellants to deliver possession of the real estate upon demand, and that they were holding possession thereof without right or claim of right.

Judgment was prayed that the contract be declared forfeited and void and of no further force and effect, and that appellants and all persons claiming by, through or under them be perpetually restrained and enjoined from claiming any rights in and to the real estate involved, and that respondent be let into the immediate possession of the real estate, and other and further proper relief.

Issues both negative and affirmative were framed upon the complaint in the action by appellants and by denials of respondent to the affirmative defenses of appellants. The evidence amply sustained the findings, conclusions and decree of the lower court.

There is no merit in the contention of appellants that there was no legal declaration of forfeiture, and therefore no forfeiture at all, to sustain this action. Under the contract entered between the Millers and appellants, the final payment of $7,000 became due February 19, 1924, at which time the Millers' assignee, respondent, tendered complete performance of the con-

tract by furnishing an abstract showing marketable
title in respondent, and depositing in escrow in the
Bank at Ferndale a deed conveying the property to
appellants as provided in the contract. The contract
was then at an end, and fully matured. Up to that time
payments, except interest and taxes, were not com-
pulsory, but optional, under the contract. This action,
whether it be called an action of foreclosure of the con-
tract of purchase, or an action to enforce it specifically,
was not based on any such forfeiture conditions as
required a formal declaration of forfeiture. This case
is not like that of *Gibson v. Rouse,* 81 Wash. 102, 142
Pac. 464, relied upon by appellants, where we said:

" . . . after the provision that time was of the
essence had been waived, it would seem clear that the
obligation on the one hand to pay and the obligation
on the other to convey became mutual, concurrent and
dependent. Neither party could thereafter put the
other party in default or claim a forfeiture without
first tendering performance on his own part, and this
regardless of the forfeiture clause."

There were no indulgences or waivers in this case
as in that. When the contract matured, February 19,
1924, respondent immediately tendered performance
on his part, as required, and where required, by the
contract. Appellants wholly failed to perform. The
action was then begun, after a reasonable time, in
March, 1924, during which intervening time appellants
might have performed the contract had they so de-
sired. The action was for recovery of the entire debt
due at the end of the contract, with interest as pro-
vided in the contract, and possession of the real estate.

[3] It is also insisted by appellants that tender of
performance by a third person not a party to the origi-
nal contract was not sufficient; that appellants had a
right to demand a warranty deed from Miller and wife,

and could not be required to accept a substitute, or suffer default on a substitute.

*Gottschalk v. Meisenheimer,* 62 Wash. 299, 113 Pac. 765, 115 Pac. 79, is relied upon as to this point, which case is clearly not applicable.

In that case there was no connecting chain of title between the vendor and the assignee of the vendor who tendered a deed to the purchaser Gottschalk. As we afterwards explained in *Big Bend Land Co. v. Hutchings,* 71 Wash. 345, 128 Pac. 652, referring to the *Gottschalk* case:

"Had Gottschalk accepted Maud Meisenheimer's deed, he would not have had Meisenheimer's warranty. Neither Meisenheimer's name nor his warranty appeared anywhere in the chain of title. Consequently, neither the holder of the legal title nor the assignee of his contract could insist upon his vendee taking a deed from a stranger without the personal warranty contracted to be given. Here Garretson conveyed by deed of general warranty to respondent, and it must convey by deed of general warranty to appellant. We do not understand that the promised covenants of Garretson must be by deed passing from Garretson to appellant direct, as implied in the argument of counsel. Such a covenant runs with the land and may be enforced against all of the covenantors in the chain of title beginning with Garretson, either jointly or severally, the only qualification or limitation being that the injured vendee shall have but one recovery. This rule is elementary." [Citing cases.]

We also held in *Herrick Improvement Co. v. Kelly,* 65 Wash. 16, 117 Pac. 705, that the contract by a vendor, "its successors or assigns," to convey land by good and sufficient deed of special warranty is sufficiently performed by a conveyance by one to whom the land had been conveyed.

It will be remembered that in this case also, the contract provides for the performance by the successors

or assigns of either of the parties. The abstract shows a connecting chain of title from appellants' covenantors in the original contract to respondent. Appellants are therefore not entitled to demand more than a conveyance derived from connected chain of title, and good title in respondent. This was shown.

[4] Appellants also complain of the denial by the court to them of a credit on the contract in the sum of $4,200, on account of stumpage and the profit that they were entitled to through the sale of timber. This contention is based upon the fact that appellants endeavored to cut and remove the timber provided for in the contract upon eleven acres of the tract, upon which respondent insisted upon compliance with the terms of the contract respecting paying the proceeds received from the sale of any such timber to him to apply upon the purchase price of the land. When respondent so insisted appellants ceased to cut the timber. It is now contended that they lost the sale of the timber and the profits thereon.

The contract requires the proceeds of the timber sold, not the net proceeds or profits, to be applied on the purchase price of the land. Had appellants wished to comply with this provision of the contract, all they had to do was to proceed as they had commenced, and let the timber be cut and sold and the entire proceeds thereof be paid over to respondent. This they saw fit not to do.

An examination of the record satisfies us that the lower court was entirely right in its findings, conclusions and decree.

Affirmed.

TOLMAN, C. J., FULLERTON, PARKER, and MAIN, JJ., concur.